Rel: July 2, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2026

_____

## SC-2025-0591
_____

## Ex parte City of Birmingham

## PETITION FOR WRIT OF MANDAMUS

## (In re: Demarco Stoudmire

## v.

## City of Birmingham)

## (Jefferson Circuit Court: CV-23-901036)

COOK, Justice.

On April 3, 2021, Demarco Stoudmire was involved in a serious motorcycle accident when a defect[1] in the road on Avenue V in Birmingham caused him to crash. He submitted a "Notice of Claim" to the City of Birmingham ("the City") within 6 months of his accident as required by Alabama law.

Eventually, Stoudmire filed suit against the City claiming negligence. The City answered his complaint by asserting, among other things, that it was entitled to municipal immunity.

After discovery, the City filed a motion for a summary judgment in which it argued that it was entitled to a judgment in its favor for two reasons. Among other things, the City argued that Stoudmire had provided no evidence indicating that it had either actual or constructive knowledge of the defect such that it would not be entitled to municipal immunity.

Stoudmire responded by pointing the trial court to an affidavit by a former city employee, a statement by a bystander to the accident, and a

---

[1]The parties dispute whether the condition was a "pothole" or a "dip," with Stoudmire himself initially describing it as a pothole before later retracting that term in favor of "dip." We therefore refer to it throughout this opinion simply as the "defect."

Birmingham Fire and Rescue patient-care report from first responders, all of which, he said, showed that a genuine issue of material fact existed as to this issue. The trial court denied the City's motion.

Around a year later, the City renewed its motion for a summary judgment and attached a few new pieces of evidence. The City also filed a motion to strike some of Stoudmire's evidence. After receiving Stoudmire's response, the trial court struck the first responders' patient-care report, the bystander's statement, and part of the former city employee's affidavit that Stoudmire had previously presented. It then denied the City's renewed summary-judgment motion.

The City has now petitioned this Court for a writ of mandamus, claiming that, with much of Stoudmire's evidence having been struck, the evidence that remains does not present a genuine issue of material fact as to whether the City had prior notice of the defect such that it was not entitled to municipal immunity.

For the reasons stated below, we conclude that Stoudmire's admissible evidence was not enough to show that a genuine issue of material fact existed as to whether the City had actual or constructive knowledge of the defect at issue and, thus, that the trial court should

3

have entered a judgment for the City based on municipal immunity. Therefore, we grant the petition and issue the writ.

Facts and Procedural History

On April 3, 2021, Stoudmire was traveling on Avenue V in Ensley, a neighborhood within the Birmingham city limits, when the motorcycle he was operating struck a defect in the road. He was thrown from the motorcycle and suffered severe injuries, including a broken collar bone and broken ribs, which required surgery.

About four months later, on August 2, 2021, he filed an "Affidavit and Notice of Claim" with the Birmingham City Clerk, purportedly notifying the City of his accident and injuries and making a claim for medical bills for the treatment of his injuries. His only description of the location of the accident was "Avenue V in Ensley."

The City acknowledged receipt of his claim and said that it would "proceed to investigate." On September 2, 2022, the City denied his claim.

On March 31, 2023, Stoudmire sued the City in the Jefferson Circuit Court. In his complaint, he alleged that the City had "failed to repair or remedy the defects in Avenue V" after those defects had been called to the City's attention.

In its answer, the City asserted that it was immune from suit under § 11-47-190, Ala. Code 1975. It also asserted that Stoudmire was barred from recovering damages under Alabama's notice-of-claim statutes -- §§ 11-47-23 and 11-47-192, Ala. Code 1975.

After discovery, on April 29, 2024, the City moved for a summary judgment, arguing, among other things, that (1) Stoudmire's notice of claim was not specific enough to comply with the notice-of-claim statutes and (2) Stoudmire had failed to provide evidence indicating that the City had actual or constructive knowledge of the defect in the road before his accident such that it was not entitled to municipal immunity under § 11-47-190.

First, the City argued that §§ 11-47-23 and 11-47-192 require that a notice of claim indicate "the place where the accident occurred." In the City's view, "Avenue V in Ensley" is too broad of a location because that road is "wide-ranging and connects to numerous streets, intersections and avenues." Therefore, the City reasoned, Stoudmire's notice of claim was deficient and the suit should be dismissed.

The City also stated that it had no actual or constructive knowledge of the defect before Stoudmire's accident. In support of its position, the

City supplied deposition testimony from its director of the Department of Public Works, Joshua Yates. He testified that he had checked the City's 311 system -- software that logs reports about infrastructure deficiencies -- and that he could not find any reports about the location of Stoudmire's accident. The City also argued that Stoudmire had failed to present substantial evidence in support of his claims against it.

Stoudmire responded to the City's notice-of-claim argument by arguing that the statutes do not require perfection -- only notice -- and that his notice was sufficiently detailed for the City to discern where the accident occurred. In support of his argument, he cited the City's response to his notice of claim, in which it stated that, after "careful review of the facts, reports and other information," it denied liability. He also cited cases from our Court in which a notice of claim had been determined to be adequate, even when it had contained incorrect information. Finally, he stated that, even if his notice of claim was lacking, the City still had copies of the patient-care report from the first responders who had responded to the scene and a case-identification card written by the police officer who also had responded to the scene. These, he said, were sufficient to put the City on notice of his claim.

As to the City's assertion that it was entitled to municipal immunity, Stoudmire countered with several pieces of evidence. First, he produced an affidavit by a former city employee, Thomas Fitzpatrick. Fitzpatrick testified that, "[w]hile employed" with the City from 2003-2019, he had struck a large hole in the vicinity of where Stoudmire's accident occurred, which broke his truck's trailer hitch. He then called his supervisors, who dispatched a City tow truck that came and hauled his truck away. In the final two sentences of his affidavit, he also testified that he "was told that the hole on Avenue V was an ongoing problem related to a pipe" that was "creating a sinkhole that had been patched multiple times but never fixed."

Next, Stoudmire highlighted a statement by Neil MacDonald, a neighbor who had helped him after his accident. That statement recounted how the hole in Avenue V "was an ongoing problem for a long time." It also detailed an incident when a Birmingham police officer escorting a funeral procession on his motorcycle had crashed after hitting the hole. Although this document was purportedly signed by MacDonald, it was not notarized.

The trial court held a hearing on the City's motion and denied the

7

motion on July 1, 2024.

On July 21, 2025, the City filed two motions: a renewed motion for a summary judgment and a motion to strike four pieces of Stoudmire's evidence. In the motion to strike, the City first argued that the final two sentences of Fitzpatrick's affidavit, in which he discussed what someone had told him about a pipe-caused sinkhole, were hearsay and inadmissible. Second, the City wanted the statement purportedly signed by MacDonald to be struck in its entirety because it was not notarized and, thus, not admissible at trial. Third, it argued that the patient-care report, generated by the first responders to the accident was not authenticated and inadmissible at trial. Finally, the City moved to strike portions of the Stoudmire's deposition that it believed constituted hearsay.

In its renewed motion for a summary judgment, the City reiterated the arguments that it had made in its initial motion, but it attached new evidence. First, it provided an affidavit of Tywanna Davis. She was the director of the 311 system's call center at the time of Stoudmire's accident and at the time the investigation was completed. Davis testified that she had conducted a search of the 311 system and had determined that there

were no records indicating that the City knew of any defect in the road before the accident.

Second, to counter evidence from MacDonald's statement, the City submitted a notice of claim and deposition excerpts from a separate lawsuit filed by the officer involved in the funeral-procession accident referenced by MacDonald. Because the officer alleged that the accident had occurred after Stoudmire's accident, the City argued that it could not establish prior notice.

Stoudmire responded by complaining that the City was not providing any new evidence and that the trial court should treat the amended motion for a summary judgment as a motion for reconsideration. He also incorporated his response to the City's earlier summary-judgment motion.

On August 6, 2025, the trial court held a hearing on the motion. Two days later, the trial court issued two orders: one striking three of the four aforementioned pieces of evidence from the record and one denying the City's amended motion for a summary judgment.

The City then filed a motion to reconsider on August 8, 2025, which was denied. This petition followed, and our Court ordered answers and

9

briefs.

## Standard of Review

We will grant a mandamus petition only when there is "'1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.'" Ex parte U.S. Bank Nat'l Ass'n, 148 So. 3d 1060, 1065 (Ala. 2014) (citation omitted).

While orders denying a summary-judgment motion are not typically reviewable by a mandamus petition, our Court has acknowledged an exception when the motion is "grounded on a claim of immunity." Ex parte Wood, 852 So. 2d 705, 708 (Ala. 2002); see also Ex parte City of Muscle Shoals, 257 So. 3d 850, 855 (Ala. 2018) (acknowledging that "[t]his Court in several cases has entertained a mandamus petition where a municipality asserted an immunity defense" and collecting cases). We will consider the issues presented only to the extent that they challenge the trial court's determination of the immunity issues. See Ex Parte Kelley, 296 So. 3d 822, 826 (Ala. 2019).

We review an order denying a summary-judgment motion de novo.

See Nettles v. Pettway, 306 So. 3d 873, 875 (Ala. 2020). First, the movant must make a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as matter of law. See Blue Cross & Blue Shield of Alabama v. Hodurski, 899, So. 2d 949, 952-53 (Ala. 2004). If the movant does so, then the burden shifts to the nonmovant to present substantial evidence demonstrating that there is a genuine issue of material fact. See Powers v. Chadwell Homes, LLC, 413 So. 3d 707, 709-10 (Ala. 2024). When making our evaluation, we view the evidence in the light most favorable to the nonmovant. See Jefferson Cnty. Comm'n v. ECO Preservation Servs., L.L.C., 788 So. 2d 121, 127 (Ala. 2000).

## Discussion

Municipalities in Alabama are generally not "liable for damages for injury done to or wrong suffered by any person." § 11-47-190, Ala. Code 1975. However, there are two exceptions to that general immunity. This case is about the second exception, which allows claims for damages when the

> "injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body

11

or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body."

Id. Put simply, a municipality can be liable for failing to maintain certain types of public infrastructure when it knew about a defect or when the defect persisted long enough that, in the ordinary course of things, it should have known about it. See Slade v. City of Montgomery, 577 So. 2d 887, 893 (Ala. 1991) (articulating that the presumption of knowledge arises when a municipality could have obtained that knowledge "by the use of ordinary diligence").

In its petition, the City argues that Stoudmire failed to present substantial evidence demonstrating that the City knew or should have known of the alleged defect and that the City is therefore entitled to immunity.[2] Specifically, the City contends that, because much of

_____

[2]The City also makes a second, more vigorous argument about Stoudmire's compliance with the notice-of-claim statutes. Those statutes detail procedures for how an injured person may proceed with such a claim against a municipality. First, the person must present a claim "within six months" of the time it accrues. § 11-47-23, Ala. Code 1975. Second, the person must file a sworn statement specifying "the day and time and the place where the accident occurred and the damages claimed" or else "[n]o recovery shall be had." § 11-47-192. Ala. Code 1975. We read those statutes together -- in pari materia -- to say that "a plaintiff in a tort action against a municipality must file a sworn statement with the clerk within six months from the accrual of the claim."

Stoudmire's evidence had been struck, the scant evidence remaining --

namely, the portions of an affidavit from a former City employee that had

not been struck, stating that he had encountered a defect at some point

between 2 and 18 years before Stoudmire's accident -- is insufficient as a

matter of law to support Stoudmire's claim. We first address whether the

City established a prima facie entitlement to immunity. We then consider

whether Stoudmire presented sufficient evidence to create a genuine

issue of material fact precluding a judgment in the City's favor.

I. The City's Prima Facie Case

---

Poe v. Grove Mem'l Hosp. Bd., 441 So. 2d 861, 863 (Ala. 1983). The City insists that Stoudmire did not, with enough detail, name the "place" of his accident. The City says that this failure to meet a procedural condition precedent for recovery warrants a judgment in its favor.

We find no caselaw that affirmatively addresses whether mandamus will lie to consider a trial court's adverse ruling on a condition precedent for recovery. The City and Stoudmire argue extensively over whether we should consider those grounds for relief here. But even if failure to comply with the notice-of-claim statutes was not reviewable via mandamus, the baseline immunity determination plainly is. We therefore do not consider whether mandamus extends to rulings regarding compliance with the notice-of-claim statutes. Instead, we will proceed with determining whether the City has demonstrated that no genuine issue of material fact existed as to whether it was entitled to municipal immunity and, therefore, has shown a clear right to mandamus relief.

13

To establish a prima facie case for municipal immunity in its renewed motion for a summary judgment, the City primarily cited two pieces of evidence. First, it relied on affidavit testimony by Davis, who was a supervisor for the 311 system's call center. She testified that she had "conducted a diligent search of the City's 311 records" and had determined that there was "no record of receiving any notice of any alleged defective condition in the 20th block of Avenue V in Ensley" before Stoudmire's accident. Then, the City leaned on deposition testimony from Yates, the director of the Department of Public Works. He testified that he "[did not] have any evidence" and was "not aware of" any documentation that evidenced the City's notice or knowledge of the defect before Stoudmire's accident.

Together, those two pieces of evidence adequately present a prima facie case that the City did not have notice of the defect in the street before Stoudmire's accident. See Ex parte City of Muscle Shoals, 257 So. 3d at 857 ("The City presented evidence from [City officials] indicating that the City had never received a complaint about the [defect]."). Specifically, they showed that the City did not know about the specific defect and that the defect had not existed long enough so that, in the

ordinary course of things, it should have known about it. So, the burden shifted to Stoudmire to produce substantial evidence showing that a genuine issue of material fact did exist as to this issue.

II. Stoudmire's Evidence

A. Stoudmire Did Not Produce Substantial Evidence Demonstrating That The City Had Actual Notice.

Section 11-47-190 allows municipalities to be subject to liability only "after the [defect] ha[s] been called to the attention of the council or other governing body." In other words, a municipality can be subject to liability only after it is put on "actual notice" of the defect at issue.

In his answer, Stoudmire points us to Fitzpatrick's affidavit, the first responders' patient-care record from the accident, and the case-identification card from the police officer who had responded to the scene of the accident to show that the defect at issue had been "called to the attention of" the City. However, the first responders' patient-care record and the case-identification card from the police officer cannot be evidence of actual notice because those documents were made contemporaneously with Stoudmire's accident. Section 11-47-190 indicates that notice must

15

have been given <u>before</u> his accident.[3] Thus, only Fitzpatrick's affidavit potentially could be evidence of actual notice in this case.

In his affidavit, Fitzpatrick testifies that he had been employed by the City from 2003 through 2019. Sometime during his employment (he does not specify when), he was driving a City truck "on Avenue V in between I-20/59 and 21 Street." His truck hit a large hole, and his trailer hitch broke off. He called and informed his City supervisors that the hole in the road was severe enough to break the trailer hitch. Those supervisors arranged a tow truck for his truck.

However, Fitzpatrick did not state that the City had actual notice because there is no testimony that the defect he encountered was the same one later encountered by Stoudmire. Rather, he states only that he worked for the City for a 17-year period and that, at some <u>unspecified point</u> during that period, he struck a large hole on Avenue V between I-

---

[3]At times, the City conflates the two distinct notice requirements for the notice-of-claim statutes and the municipal-immunity notice; arguments for one sometimes appear under headings for the other. Nevertheless, the City did present both arguments to the trial court and to this Court.

Stoudmire repeats the City's error in his answer, in which he argues that records from the day of the accident constitute actual (prior) notice to the City of the defect. Stoudmire's answer at 18-19.

20/59 and 21st Street. He does not identify when the incident occurred or provide any details that would tie that defect to the one at issue here.

That gap in time resolves the issue before us. Fitzpatrick's encounter could have occurred at any time between 2003 and 2019. The defect he describes, therefore, could have existed years -- or even decades -- before Stoudmire's accident. In fact, the end of his employment (2019) is approximately two years before Stoudmire's accident occurred (2021). Even if it is possible that the two incidents involved the same defect, possibility is not enough; the conclusion that the two incidents involved the same defect would rest on "'"speculation that fact issues exist,"'" which our Court has said is insufficient to defeat a properly supported summary-judgment motion. Ex parte Ala. Peace Officers' Standards & Training Comm'n, 34 So. 3d 1248, 1252 (Ala. 2009) (quoting Brown ex rel. Brown v. St. Vincent's Hosp., 899 So. 2d 227, 238 (Ala. 2004) (plurality opinion), quoting in turn Crowne Invs., Inc. v. Bryant, 638 So. 2d 873, 878 (Ala. 1994)).

Nothing in the materials before us affirmatively connects Fitzpatrick's defect to the defect at issue in this case. The hole Fitzpatrick encountered could have been repaired, resurfaced, or re-formed multiple

times in the intervening years. Without evidence tying the two together more explicitly, Fitzpatrick's affidavit cannot establish that a genuine issue of material fact regarding whether the City had actual notice of the specific defect at issue exists in this case.

### B. Stoudmire Did Not Produce Substantial Evidence Demonstrating That The City Had Constructive Notice.

In his answer, Stoudmire points to four pieces of evidence that, he says, indicate that the City was put on constructive notice of the road's defect. First, he cites MacDonald's statement that multiple serious wrecks had occurred at that location before the defect was eventually repaired. Second, he claims that the City has record-keeping practices that include regularly generating accident reports and dispatching various departments to vehicle accidents. Third, he references the City's own testimony that the road was first paved at least 20 years ago and states his belief that "the mere age and expected deterioration of such a road should have placed the City on notice that dangerous defects were likely to exist." Stoudmire's answer at 20. Finally, he points to the same Fitzpatrick affidavit that gives a nearly two-decade-long window during which a defect could have existed. Stoudmire argues that constructive notice can be "found or inferred by virtue of the defect's likely age and

18

size." Id. at 19.

Stoudmire is wrong on all points. First, MacDonald's statement was struck from the record by the trial court and, thus, cannot be relied on by this Court in determining whether there are any genuine issues of material fact left to be decided. Stoudmire suggests that the trial court erred in determining that the entirety of MacDonald's statement was inadmissible because, he says, "[MacDonald] planned to attend trial and testify live to that effect." Stoudmire's answer at 8. But that does not matter. "Written documents not certified or otherwise authenticated as required by Rule 56(e), Ala. R. Civ. P., may not properly be considered on a motion for a summary judgment." Barrett v. Radjabi-Mougadam, 39 So. 3d 95, 97 (Ala. 2009). Affidavits that satisfy Rule 56(e) must be "confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer an oath or affirmation." Couch v. City of Sheffield, 708 So. 2d 144, 152-53 (Ala. 1998) (plurality opinion) (emphasis added).

Stoudmire repeatedly refers to MacDonald's written statement as an affidavit. But it is not. Even calling it "MacDonald's" statement is a bridge too far because there is nothing to indicate that MacDonald is the

one who signed it. Therefore, the trial court was correct to strike the statement because it lacked authentication, and Stoudmire cannot rely on it here.

Second, the record contains no evidence of other accidents at this precise location from which one could infer that first responders generated reports. Besides, Stoudmire does not allege what these accident reports might show. The only suggestion to the contrary comes from MacDonald's statement, which was struck.

Third, Stoudmire's argument that 20-year-old streets must have defects rests on mere speculation. The materials before us contain no testimony supporting that premise. Cf. Ex parte City of Muscle Shoals, 257 So. 3d at 857 ("Nor is there any evidence indicating the City or its personnel knew or should have known that a steel grate of the nature of the grate at issue would deteriorate to a hazardous state within a 25-year period.").

Further, § 11-47-190 does not permit liability based on the mere possibility of a street's deterioration over time. It requires that "such defect" -- that is, the defect at issue -- exist for "such an unreasonable length of time" that the municipality can be charged with knowledge of

20

it. § 11-47-190. In other words, the inquiry is defect-specific. A plaintiff cannot rely on a general assumption that aging infrastructure tends to develop problems; he or she must show that the particular defect persisted long enough to justify imputing knowledge to the municipality.

Finally, Fitzpatrick's affidavit, which had stated that he had hit a defect sometime between 2003 and 2019, is deficient for the same reason. Because there is not enough evidence indicating that the defects that caused his and Stoudmire's accidents are the same defect, the inquiry ends there. We simply do not have enough information from his affidavit alone, even viewing it favorably to Stoudmire, to infer that the defect in Fitzpatrick's case is the same defect at issue in this case. Because of that, we do not have enough testimony to establish that the defect existed for any period of time, much less for such an unreasonable length of time that the City could be charged with notice of it. Thus, Stoudmire failed to produce substantial evidence demonstrating that a genuine issue of material fact existed as to whether the City had constructive notice of the defect at issue.

<u>Conclusion</u>

The City provided evidence demonstrating that it had no notice of

the defect before Stoudmire's accident. Stoudmire delivered only a combination of inadmissible statements and evidence based on speculation that was not sufficient to defeat the City's motion for a summary judgment. Therefore, the trial court erred in denying the City's motion for a summary judgment.[4] For those reasons, we grant the City's petition and issue a writ directing the trial court to vacate its order denying the City's motion for a summary judgment and to enter, instead, an order granting that motion.

PETITION GRANTED; WRIT ISSUED.

Shaw, Wise, Sellers, and Parker, JJ., concur.

Bryan, J., dissents.

Mendheim, J., dissents, with opinion, which Stewart, C.J., and McCool, J., join.

---

[4]Because we find this issue to be decisive in this case, we decline to address any other issues raised by the parties on appeal. See Jackson Hosp. & Clinic, Inc. v. Murphy, 343 So. 3d 490, 498 n.3 (Ala. 2021) (pretermitting discussion of remaining issues on appeal after resolving a dispositive issue).

22

MENDHEIM, Justice (dissenting).

I respectfully dissent.

The City of Birmingham has been aware of Demarco Stoudmire's possible cause of action against the City since before August 6, 2021, when Lawrence Cooper, the Chief Assistant City Attorney, sent Stoudmire a letter regarding Stoudmire's "Claim Filed with the City of Birmingham." Stoudmire's notice of claim had described the date of the alleged incident involving a "large Pothole in the roadway" on Avenue V in the Ensley neighborhood in Birmingham and had the stated purpose of "comply[ing] with Alabama Code Sections 11-47-23 and 11-47-192." Stoudmire's notice of claim also had requested that "the appropriate officials contact [Stoudmire's] attorney," whose contact information was included in the notice of claim. Further, I note that, in the May 5, 2021, affidavit of former City employee Thomas Fitzpatrick, Fitzpatrick averred that a truck that he drove had been damaged upon hitting a "large hole in the road" "on Avenue V in between I-20/59 and 21 Street Ensley" and that he had informed his supervisors at the City of that incident. Fitzpatrick was employed by the City from 2003 through 2019.

In Cooper's August 2021 letter responding to Stoudmire's notice of

claim, Cooper informed Stoudmire that the City would "proceed to investigate [his] claim" and "notif[y] [him] of [the City's] decision when [the] investigation [was] complete." Cooper's letter stated that, "[o]ther than the documents [Stoudmire had] already provided, if [he had] any additional documents or items to support [his] claim, … please send them to my attention." Cooper's letter made no mention of any defect in Stoudmire's notice of claim. Cooper's letter likewise made no reference to any inability of the City to investigate the claim based on the information known to the City at that time.

After the City completed its investigation, Pamela L. Jones, as Assistant City Attorney, sent Stoudmire's counsel a letter dated September 2, 2022, that quoted Ala. Code 1975, § 11-47-190, and stated: "After careful review of the facts, reports and other information regarding the claim you filed, we do not find that the City of Birmingham is liable for the damages you have claimed. Therefore, your claim is denied." Jones's letter made no mention of any defect in Stoudmire's notice of claim or of any inability of the City to investigate the claim as the basis for the City's denial. Likewise, Jones's letter did not reference Ala. Code 1975, § 11-47-23 or § 11-47-192.

24

The City raised the insufficiency-of-notice argument when it filed its motion for a summary judgment on April 29, 2024; the City also argued that Stoudmire did not have substantial evidence to support his claim on the merits. The circuit court denied the City's summary-judgment motion on July 1, 2024.[5] The City did not seek mandamus review of the July 2024 order.

The underlying case was twice scheduled for trial, but the trial settings were continued. The trial was then rescheduled for August 18, 2025. On July 21, 2025, less than one month before the scheduled trial and over one year after the City's motion for a summary judgment had been denied, the City filed a renewed motion for a summary judgment, arguing the same issues it had presented in its April 2024 motion for a summary judgment. The City also filed a motion to strike, challenging evidence it could have challenged when it filed the April 2024 motion for a summary judgment. Further, in support of its renewed motion for a summary judgment, the City submitted additional evidence, but that

---

[5]In his April 2024 deposition, Joshua Yates, who was the director of the City's Department of Public Works, testified that it was "the City's intent to state that we weren't on notice about" the alleged road defect on Avenue V.

evidence could have been obtained and presented in support of its April 2024 motion for a summary judgment. The circuit court again denied the City's motion.

The extraordinary writ of mandamus should "be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995). I acknowledge that a trial court may exercise its discretion to reconsider its ruling on, or to permit the renewal of, a motion for a summary judgment. See Ex parte Jones, 147 So. 3d 415, 420 (Ala. 2013) (discussing the trial court's discretion regarding summary-judgment practice). However, this Court is not obligated to exercise its discretion to allow mandamus review simply because the trial court chose to reconsider a motion for a summary judgment. And, in the context of a renewed motion for a summary judgment, the requirement for seeking timely review is a pertinent consideration to the exercise of such discretion. Id. at 420 (concluding, as to Chad Jones's second mandamus petition raising the issue of State-agent immunity, "that [he] ha[d] failed

26

to demonstrate that he ha[d] a clear legal right to the relief sought" when he had not timely filed his initial mandamus petition from the trial court's ruling on his initial motion for a summary judgment).

Under the facts before us, I cannot conclude that the circuit court had an imperative duty to grant the City's renewed motion for a summary judgment as to Stoudmire's action against the City simply because it chose to consider the City's renewed motion for a summary judgment. Nor, assuming that there was no disputed issue of material fact as to the sufficiency of Stoudmire's notice, can I conclude that review by appeal from an adverse judgment would be an inadequate remedy in light of the timing of the City's renewed motion for a summary judgment in relation to the scheduled trial. This mandamus petition reflects nothing more than an inefficient, last-minute interruption to what would have been the normal trial-and-appeal process regarding issues that the City could have sought timely mandamus review of after the entry of the July 2024 order. By rewarding the City's essentially duplicative motion practice, this Court is encouraging more of the same. Specifically, by taking a liberal approach to renewed-motion practice near the time of a scheduled trial, this Court is creating a back-door mechanism that lowers

27

the bar for what would otherwise require a showing of "good cause" justifying the late timing of a petition for the writ of mandamus. A petition for the writ of mandamus may be considered untimely even if it is filed within the presumptively reasonable period for filing a notice of appeal. See Rule 21(a)(3), Ala. R. App. P.; see also Committee Comments to Amendments to Rule 21(a) and 21(e)(4) Effective September 1, 2000 ("[A]n appellate court may find a petition challenging a ruling of the trial court to be untimely even though it is filed within the time for taking an appeal, as, for example, when the petition is filed shortly before trial, yet several days or even weeks after the adverse ruling. Consequently, the better practice is to include in the petition a description of the circumstances constituting good cause for any delay, although the amended rule mandates such a showing only when the petition is filed beyond the time for taking an appeal from the ruling."). Under the circumstances before us, what good cause justifies the City's delay in presenting this petition to this Court?

Stewart, C.J., and McCool, J., concur.